# EXHIBIT E

# APPRAISAL OF REAL PROPERTY

A Fee Interest in the Real Property



**LOCATED AT**

10366 Ormond St
Sunland, CA 91040
Tract #22714, Lot 26, Map Book 649, Pages 93-95

**FOR**

Mr. Vahe Khojayan, Esq.
1010 N. Central Ave., Ste 450

Glendale, CA 91202

**OPINION OF VALUE**

410,000

**AS OF**

06/15/2020

**BY**

Michael F. Ford, AG002512
Michael F. Ford, Appraisals
1956 Fashion Ave
Long Beach, CA 90810
(714)366-9404
mike@mfford.com
https://www.mfford.com

Michael F. Ford, Appraisals
1956 Fashion Ave
Long Beach, CA 90810
(714)366-9404
https://www.mfford.com

08/24/2020

Mr. Vahe Khojayan, Esq.
1010 N. Central Ave., Ste 450
Glendale, CA 91202

Gler Property: 10366 Ormond St
Sunland, CA 91040
Borrower: na
File No.: MFF20200707R

Opinion of Value: $ 410,000
Effective Date: 06/15/2020

In accordance with your request, I have appraised the above referenced property. The report of that appraisal is attached.

The purpose of the appraisal is to develop an opinion of market value for the property described in this appraisal report, as improved, in unencumbered fee simple title of ownership.

This report is based on a physical analysis of the site and improvements, a locational analysis of the neighborhood and city, and an economic analysis of the market for properties such as the subject. The appraisal was developed and the report was prepared in accordance with the Uniform Standards of Professional Appraisal Practice.

The opinion of value reported above is as of the stated effective date and is contingent upon the certification and limiting conditions attached.

It has been a pleasure to assist you. Please do not hesitate to contact me or any of my staff if we can be of additional service to you.

Sincerely,

Michael F. Ford, AG002512
Ca. General Certified R.E. Appraiser
License or Certification #: AG002512
State: CA Expires: 05/22/2021
mike@mfford.com

| Owner | Anahit Harutyunyan | | | File No. | MFF20200707R | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10366 Ormond St | | | | | | |
| City | Sunland | County | Los Angeles | State | CA | Zip Code | 91040 |
| Lender/Client | Mr. Vahe Khojayan, Esq. | | | | | | |

## TABLE OF CONTENTS

Cover Page ..... 1
Letter of Transmittal ..... 2
FIRREA/USPAP Addendum ..... 3
GP Residential ..... 4
Additional Comparables 4-6 ..... 7
Supplemental Addendum ..... 8
Statement of Limiting Conditions ..... 10
GP Residential Certifications Addendum ..... 12
Subject Photos ..... 14
Comparable Photos 1-3 ..... 15
Comparable Photos 4-6 ..... 16
Photograph Addendum ..... 17
Photograph Addendum ..... 18
Photograph Addendum ..... 19
Photograph Addendum ..... 20
Plat Map ..... 21
Sketch Page ..... 22
Zoning Map ..... 23
Generic Map ..... 24
Location Map ..... 25
Appraiser Qualifications Summary - Page 1 ..... 26
Appraiser Qualifications Summary - Page 2 ..... 27
Appraiser Qualifications Summary - Page 3 ..... 28
OMEGA STRUCTURAL CONTRACTORS REPORT - Page 1 ..... 29
OMEGA STRUCTURAL CONTRACTORS REPORT - Page 2 ..... 30
OMEGA STRUCTURAL CONTRACTORS REPORT - Page 3 ..... 31
OMEGA STRUCTURAL CONTRACTORS REPORT - Page 4 ..... 32
OMEGA STRUCTURAL CONTRACTORS REPORT - Page 5 ..... 33
OMEGA STRUCTURAL CONTRACTORS REPORT - Page 6 ..... 34
OMEGA STRUCTURAL CONTRACTORS REPORT - Page 7 ..... 35
OMEGA STRUCTURAL CONTRACTORS REPORT - Page 8 ..... 36
OMEGA STRUCTURAL CONTRACTORS REPORT - Page 9 ..... 37
OMEGA STRUCTURAL CONTRACTORS REPORT - Page 10 ..... 38
OMEGA STRUCTURAL CONTRACTORS REPORT - Page 11 ..... 39
OMEGA STRUCTURAL CONTRACTORS REPORT - Page 12 ..... 40
OMEGA STRUCTURAL CONTRACTORS REPORT - Page 13 ..... 41
OMEGA STRUCTURAL CONTRACTORS REPORT - Page 14 ..... 42
OMEGA STRUCTURAL CONTRACTORS REPORT - Page 15 ..... 43

# FIRREA / USPAP ADDENDUM

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Owner | Anahit Harutyunyun | | | File No. | MFF20200707R | | |
| Property Address | 10366 Ormond St | | | | | | |
| City | Sunland | County | Los Angeles | State | CA | Zip Code | 91040 |
| Lender/Client | Mr. Vahe Khojayan, Esq. | | | | | | |

**Purpose**

Develop opinion of market value (MV) as defined herein within the appraisal report. In this instance, the terms fair market value (FMV) and market value (MV) are deemed to be synonymous and may be referred to interchangeably within the definition of market value.

**Scope of Work**

Initial discussion with attorney-client regarding purpose and use. Interview owner and spouse re original purchase and subsequent offerings; damage noted/observed & or reported. Read various expert reports. Cross referenced with appraiser's other similar soil condition hillside home appraisals and reports (specifically Mulholland Dr. litigation case involving unstable soil), reviewed listing and sales history, deed copy, researched ownership, market data, comparable sales, costs to replace (as new) as well as potential varied repair scenarios, inspected the property, conducted market research for appropriate comparable sales data. Considered three traditional approaches to value, excluding only the income approach as most property in this area is not purchased for income producing potential and adequate data for credible income analysis is lacking as a result. Reconciled quality and quantity of available data and determined credible results can be developed. Applied applicable appraisal techniques and developed an opinion as to the Fair Market Value as defined herein within this appraisal report.

**Intended Use / Intended User**

Intended Use: to assist the client (attorney) and United States Bankruptcy Court & other court & or client authorized parties to determine supported market value for the courts use in determining asset disposition.

Intended User(s): Client (attorney); his clients (owners); the court and duly authorized officials of the court.

**History of Property**

Current listing information: The subject property is not currently reported to be listed. It has been listed without selling since it's last sale date.

Prior sale: The last recorded sale of the subject was 08/082017 (recording date) for a sale dated 6/21/2017 per CoreLogic RealQuest commercial sourced public records data.

**Exposure Time / Marketing Time**

Typically 30 to 90 days. Occasionally up to 120+- days. The subject adverse site characteristics could render it non marketable at all; or alternatively require a much longer marketing period estimated at from 120 days to as much as a year. Most recently there has been an atypically short marketing period measured in sinlge or double weeks. This is not the norm, nor can it be relied upon to continue.

**Personal (non-realty) Transfers**

none.

**Additional Comments**

The subject was acquired in 2017 after having been listed for sale as a short sale / notice of default offering since 01/27/2015 according to MLS #BB15019558. Time on market reported as 92 days is erroneous based upon the stated listing date of 01/27/2015. Listed at an asking price of $629,000; it was noted 1st lien holder would look at offers starting at $590,000 & buyer to pay approximately $30,000 toward judgments in escrow. (Note later sale comments reported the sale price was $595,000 PLUS buyer paid approximately $60,000 more than the recorded sale price for other liens and judgments. County Clerk and documentary transfer stamps were for only $594,000 with an additional $60,000 reportedly paid outside o f the reported sale contract in escrow. $654k appears to be real price paid. Its unknown if this was actually an REO lien holder sale at time of sale or if seller was the actual loan indebted borrower/owner. Sold in as is condition with no disclosures noted. A so called 'buyer beware' type sale. Legal living area and or 'room' count discrepancies appear to have existed at that time. A lower bedroom/bath area was referred to as 'an office'. Public records suggest a permit for work on this area may have been for a 'shed' (below second level living area over garage and balcony area).

The subject was next listed 11/01/2019 at an asking price of $899,000. It was canceled (03/04/2020). Days on market reported in mls as 124+-. Owner reports listing and a pending sale were canceled as a result of potential buyer-discovered serious foundation issues.

The subject was next listed 03/11/2020 at an asking price of $799,900. Listing expired 6/11/2020. GLA discrepancy reported in this listing with purported actual size at 2,685 SF and 'public records (misstated as 'title') SF of 2,250 SF'. Size issues are discussed further within this appraisal report under improvements & may derive from sketched improvement size.

**Certification Supplement**

1. This appraisal assignment was not based on a requested minimum valuation, a specific valuation, or an approval of a loan.
2. My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result or the occurrence of a subsequent event.

| | | | |
|---|---|---|---|
| Appraiser: | Michael F. Ford, AG002512 | Supervisory Appraiser: | |
| Signed Date: | 08/24/2020 | Signed Date: | |
| Certification or License #: | AG002512 | Certification or License #: | |
| Certification or License State: | CA Expires: 05/22/2021 | Certification or License State: | Expires: |
| Effective Date of Appraisal: | 06/15/2020 | Inspection of Subject: | ☐ Did Not ☐ Exterior Only ☐ Interior and Exterior |

# RESIDENTIAL APPRAISAL REPORT

Harutyunyan
File No.: MFF20200707R

## SUBJECT

Property Address: 10366 Ormond St | City: Sunland | State: CA | Zip Code: 91040
County: Los Angeles | Legal Description: Tract #22714, Lot 26, Map Book 649, Pages 93-95
Assessor's Parcel #: 2544-039-011
Tax Year: 2019 | R.E. Taxes: $ 7,395 | Special Assessments: $ unknown | Borrower (if applicable): na
Current Owner of Record: Anahit Harutyunyan | Occupant: [X] Owner [ ] Tenant [ ] Vacant | [ ] Manufactured Housing
Project Type: [ ] PUD [ ] Condominium [ ] Cooperative [X] Other (describe) SFR | HOA: $ -0- [ ] per year [ ] per month
Market Area Name: Sunland/Shadow Hills | Map Reference: 31084 | Census Tract: 1021.07

## ASSIGNMENT

The purpose of this appraisal is to develop an opinion of: [X] Market Value (as defined), or [ ] other type of value (describe)
This report reflects the following value (if not Current, see comments): [ ] Current (the Inspection Date is the Effective Date) [X] Retrospective [ ] Prospective
Approaches developed for this appraisal: [X] Sales Comparison Approach [X] Cost Approach [ ] Income Approach (See Reconciliation Comments and Scope of Work)
Property Rights Appraised: [X] Fee Simple [ ] Leasehold [ ] Leased Fee [ ] Other (describe)
Intended Use: litigation support for bankruptcy case//Valuation effective date is retrospective +- three (3) weeks prior to inspection date. As assumption is made that observed conditions on 7/7/20 & 6/15/2020 were essentially the same.
Intended User(s) (by name or type): See disclosed categorical users
Client: Mr. Vahe Khojayan | Address: on cover
Appraiser: Michael F. Ford, AG002512 | Address: 1956 Fashion Ave, Long Beach, CA 90810

## MARKET AREA DESCRIPTION

| Location: | [ ] Urban | [X] Suburban | [ ] Rural | Predominant Occupancy | One-Unit Housing PRICE $(000) | AGE (yrs) | Present Land Use | Change in Land Use |
|---|---|---|---|---|---|---|---|---|
| Built up: | [X] Over 75% | [ ] 25-75% | [ ] Under 25% | | | | One-Unit 10 % | [ ] Not Likely |
| Growth rate: | [ ] Rapid | [X] Stable | [ ] Slow | [X] Owner | | | 2-4 Unit % | [X] Likely * [X] In Process * |
| Property values: | [X] Increasing | [ ] Stable | [ ] Declining | [ ] Tenant | 600 Low | 5-10+- | Multi-Unit % | * To: older sfr to new & |
| Demand/supply: | [X] Shortage | [ ] In Balance | [ ] Over Supply | [ ] Vacant (0-5%) | 1,250 High | 10-30+- | Comm'l % | remod sfr |
| Marketing time: | [X] Under 3 Mos. | [ ] 3-6 Mos. | [ ] Over 6 Mos. | [ ] Vacant (>5%) | 875 Pred | 40 | % | |

Market Area Boundaries, Description, and Market Conditions (including support for the above characteristics and trends): Sunland Blvd. to north and west; unpaved extension north/south of Worman Ave to th east (open area) and south generally along Tuxford/Horse Haven Sts. Competitive area immediately north of Sunland Blvd. is a market alternative-though many sites are lower and flatter. The Sunland-Tujunga area of Los Angeles is predominantly a suburban area comprised of larger lot sfrs in the north along hillsides and canyons. Property values are increasing overall. Most new development takes place on infill sites previously not considered economic for development due to step topography. The subject's specific sub neighborhood is built along two basic mountain spines with the crest at Ormond and slightly lower areas along Ditson and Dale. City services are within easy vehicle commuting distances. Economic base is historically deemed stable overall. The Incorporated City of Los Angeles is the governing jurisdiction. Extremely low interest rates are spurring sales volume despite the overall economic condition of the country related to Covid 19. Essentially the market is 'trusting' that economic stability will return.

## SITE DESCRIPTION

Dimensions: 15' x irregular | Site Area: 23,390 sf per plat
Zoning Classification: RE40 | Description: very low density sfr
Zoning Compliance: [X] Legal [ ] Legal nonconforming (grandfathered) [ ] Illegal [ ] No zoning
Are CC&Rs applicable? [ ] Yes [X] No [ ] Unknown | Have the documents been reviewed? [ ] Yes [ ] No | Ground Rent (if applicable) $ /
Highest & Best Use as improved: [ ] Present use, or [X] Other use (explain) Legally permitted limited living area; exclusive of existing unpermitted area
Actual Use as of Effective Date: sfr | Use as appraised in this report: sfr
Summary of Highest & Best Use: The four tests of highest & best use are met by continued use as an sfr. The underlying use as an sfr would be legal; physically possible, economically feasible and maximally profitable. The actual use includes unpermitted illegal and unsafe areas. To the extent determinable illegal living area is excluded in the concluded value opinion & HBU conclusion.

| Utilities | Public | Other | Provider/Description | Off-site Improvements | Type | Public | Private | Topography | side cut w/severe down slope |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | [ ] | | Street | asphalt | [X] | [ ] | Size | typical gross/atypical net |
| Gas | [X] | [ ] | | Curb/Gutter | concrete | [X] | [ ] | Shape | irregular |
| Water | [X] | [ ] | | Sidewalk | in area | [X] | [ ] | Drainage | suspected inadequacy -rear |
| Sanitary Sewer | [X] | [ ] | | Street Lights | standard-adequate | [ ] | [ ] | View | good |
| Storm Sewer | [ ] | [ ] | | Alley | | [ ] | [ ] | | |

Other site elements: [ ] Inside Lot [ ] Corner Lot [X] Cul de Sac [ ] Underground Utilities [ ] Other (describe)
FEMA Spec'l Flood Hazard Area [ ] Yes [X] No | FEMA Flood Zone X | FEMA Map # 06037C1330F | FEMA Map Date 09/26/2008
Site Comments: The subject site is located near (but below) the crest of a hill on the south side of the 'spine' or ridge represented by Ormond Street. South side of the street lots tend to have god views but extremely truncated (usable) site depth despite large appearing plat map dimensions. The subject is reported to have a gross site area in excess of 23,000 sf however, only about 3,000 +- of it is usable (about 13%-15%+-). The pad to slope area appears to be eroding. Drainage does not appear to be adequate. Undercutting is occurring.

## DESCRIPTION OF THE IMPROVEMENTS

| General Description | | Exterior Description | | Foundation | | Basement [X] None | | Heating | |
|---|---|---|---|---|---|---|---|---|---|
| # of Units | 1 [ ] Acc.Unit | Foundation | concrete | Slab | no | Area Sq. Ft. | | Type | hvac forced |
| # of Stories | split/2 | Exterior Walls | stucco | Crawl Space | yes | % Finished | | Fuel | gas |
| Type | [X] Det. [ ] Att. [ ] | Roof Surface | composition | Basement | | Ceiling | | Cooling | |
| Design (Style) | conventional | Gutters & Dwnspts. | partial | Sump Pump | [ ] | Walls | | Central | yes |
| [X] Existing [ ] Proposed [ ] Und.Cons. | | Window Type | aluminum | Dampness | [ ] | Floor | | Other | |
| Actual Age (Yrs.) | 1956 | Storm/Screens | partial | Settlement | yes-extensive | Outside Entry | | | |
| Effective Age (Yrs.) | 60/comments | | | Infestation | unknown | | | | |

| Interior Description | | Appliances | | Attic [ ] None | | Amenities | | | | Car Storage [ ] None | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Floors | tile & laminates/good | Refrigerator | [P] | Stairs | [ ] | Fireplace(s) # | 1 | Woodstove(s) # | | Garage # of cars ( Tot.) | |
| Walls | plaster and drywall | Range/Oven | [X] | Drop Stair | [ ] | Patio | brick/concrete | | | Attach. | |
| Trim/Finish | varied/good interior | Disposal | [X] | Scuttle | [X] | Deck | wood | | | Detach. | |
| Bath Floor | tile/good | Dishwasher | [X] | Doorway | [ ] | Porch | | | | Blt.-In | 2 |
| Bath Wainscot | tile/good | Fan/Hood | [X] | Floor | [ ] | Fence | sides | | | Carport | |
| Doors | varied/good | Microwave | [ ] | Heated | [ ] | Pool | | | | Driveway | 0 apron-min |
| | | Washer/Dryer | [ ] | Finished | [ ] | | | | | Surface | concrete |

Finished area above grade contains: 5 Rooms 2* Bedrooms 3* Bath(s) 2,250 Square Feet of Gross Living Area Above Grade
Additional features: see addendum
Describe the condition of the property (including physical, functional and external obsolescence): See attached addenda.

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

# RESIDENTIAL APPRAISAL REPORT



## TRANSFER HISTORY

My research [X] did [ ] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s): MLS (CRMLS/MATRIX) & owner

| 1st Prior Subject Sale/Transfer | |
|---|---|
| Date: | see FIRREA USPAP page |
| Price: | comments & details of |
| Source(s): | prior sales & listings |
| **2nd Prior Subject Sale/Transfer** | |
| Date: | |
| Price: | |
| Source(s): | |

Analysis of sale/transfer history and/or any current agreement of sale/listing: See FIRREA addendum pages// Note concerning sales grid below: Sale 1 reported contract date was 6/5/20; Sale 2 was 5/21/20, & Sale 4 was 6/24/20 with a listing date of 6/12/2020. All sales are closed sales. All were indicative of market conditions in effect on the effective date of value either closing escrow; being contracted for (accepted doffer) or having been listed prior to the reported effective date of value.

## SALES COMPARISON APPROACH TO VALUE (if developed)

[ ] The Sales Comparison Approach was not developed for this appraisal.

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 10366 Ormond St Sunland, CA 91040 | 10529 Art St Sunland, CA 91040 | | 10427 Ditson St Sunland, CA 91040 | | 10329 Valley Glow Dr Sunland, CA 91040 | |
| Proximity to Subject | | 0.56 miles N | | 0.08 miles NW | | 0.73 miles N | |
| Sale Price | $ na | | $ 1,250,000 | | $ 953,500 | | $ 885,000 |
| Sale Price/GLA | $ /sq.ft. | $ 534.19 /sq.ft. | | $ 485.24 /sq.ft. | | $ 442.50 /sq.ft. | |
| Data Source(s) | Inspection/cmmts | mls #20582248 Matrix | | mls #BB20087305 Matrix | | mls #SR20068393 | |
| Verification Source(s) | see comments | PR(Realist) doc #700678 | | PR(Realist) doc #683324 | | PR(Realist) doc #562933 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing Concessions | none forecast | Cash sale reported | | conventional $4150 credit in escrow* | -5,000 | conventional none | |
| Date of Sale/Time | eff.6/15/2020 | coe 6/26/20 | | coe 6/23/20 | | coe 5/22/20 | |
| Rights Appraised | fee simple | same | | same | | same | |
| Location | average | superior/Hansen Ht | -125,000 | similar | | similar | |
| Site | 23,390 sf /15% use | 15,630/100% | -365,000 | 18,368/ 30%+- | -60,000 | 20,706/ 50% | -205,000 |
| View | good | inferior | offset | similar | | similar | |
| Design (Style) | conventional | similar | | similar | | similar | |
| Quality of Construction | good* | superior | in condition | similar | | similar | |
| Age | 1956 / 64 | 21 | | 60 | | 56 | |
| Condition | poor to fair | very good | -300,000 | very good | -300,000 | very good | -300,000 |
| Above Grade Room Count (Total / Bdrms / Baths) | 5 / 2* / 3* | 7+ / 4 / 3 | | 5 / 3 / 2 | | 6 / 3 / 3 | |
| Gross Living Area | 2,250 sq.ft. | 2,340 sq.ft. | -9,000 | 1,965 sq.ft. | +29,000 | 2,000 sq.ft. | +25,000 |
| Basement & Finished Rooms Below Grade | see addendum comments (-0-) | conv garage to ADU/ 789 SF | | none | | none | |
| Functional Utility | poor | superior/under site | | superior/under site | | superior/under site | |
| Heating/Cooling | fau/cac | similar | | similar | | similar | |
| Energy Efficient Items | none known | unknown | | unknown | | unknown | |
| Garage/Carport | G2 Blt in | converted above | +20,000 | G2/similar | | G2 & RV Pkg/Sup | qualitative |
| Porch/Patio/Deck | patio & deck | superior pool bbq+ | -50,000 | superior pool bbq+ | -50,000 | super. pool & gazebo | -50,000 |
| Other | not applicable | na | | na | | na | |
| Days on Market | Norm is 30-90+- | DOM 3 | | DOM 11 | | DOM 6 | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Net Adjustment (Total) | | [ ] + [X] - | $ -829,000 | [ ] + [X] - | $ -386,000 | [ ] + [X] - | $ -530,000 |
| Adjusted Sale Price of Comparables | | | $ 421,000 | | $ 567,500 | | $ 355,000 |

Summary of Sales Comparison Approach Site adjustments derived from extracted land value of comparable sale s used with a rounded mean (mean was $31 rounded as $30/sf) applied to the estimated differences between the subject's usable site area and the comparables usable site area; subjected to further sensitivity analysis. Results rounded to significant market numbers/values. Quality rating "Best Standard" Craftsman Nat. Bldg. Cost Manual 2019; pg 14, 2200 sf, $156.21 + 9% locality adjustment; 1.09 x $156.21 = $170.27 SAY $170. Cost to cure condition differences on a price per sf is +-$133/sf ($300,000 / 2,250SF). Normally GLA adjustment would be estimated using sensitivity analysis adjusted depreciated replacement costs new (DRCN) which would typically run 2/3+- of RCN in this market area. I used the normal ratios although the subject improvements are effectively fully depreciated due to severe foundation defects and movement hazard. The line item condition adjustment is estimated based on the Structural analysis and repair bid by OMEGA Structural Inc. dated July 31, 2020. They opined a mid range estimate of $260,500 in a range that could run 10% to 15%+- higher or lower-though lower is unlikely). No typical buyer is going to base a purchase price adjustment at lower than the estimated upper end of probable costs. $260,500 x 1.15% = $299,575 SAY $300,000. Site adjustments are based on $30 sf of net usable site area differences. The mean extracted land value of non distressed sites in this area was $31 per SF. I've rounded it to $30 and then further rounded the results to significant numbers. GLA is at $100/sf rounded to the nearest $1,000. Garage adjustments are estimated at cost to replace assuming the site is large enough to accommodate a garage. Ten car driveways and RV parking pads are a superior feature albeit one that I cant reasonably quantify in terms of market impact. The subject lacks even a parking apron. Its off street parking is virtually limited to two vehicles IF both are parked in the garage. There is no driveway parking. Pool & outdoor amenity differences adjusted at $50,000 derived from lower end costs to build a market-competitive pool in hillside areas. Contractor provided cost data.

Additional comments and sales comparison reconciliation on lower portion of comparables 4 & 5 grid sheet page (two pages after this one).

**Indicated Value by Sales Comparison Approach $** 410,000

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

# RESIDENTIAL APPRAISAL REPORT

Harutyunyan
File No.: MFF20200707R

**COST APPROACH TO VALUE (if developed)** ☐ The Cost Approach was not developed for this appraisal.

Provide adequate information for replication of the following cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value): Extracted from sales used in mkt approach; in order are: $50.85; $44.54; $31.82; $39.71 & $29.55. Mean is $31.28. SAY $31. Extension is $31 x 23,494 = $728,314 ROUNDED as $730,000.

ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW

Source of cost data: Craftsman November 2019

Quality rating from cost service: good std Effective date of cost data: 11/2019

Comments on Cost Approach (gross living area calculations, depreciation, etc.):

100% estimated physical depreciation.Major repairs required for habitability which upon completion would/could reduce effective age to +-30-40 out of 75 total. Functional inadequacy due to slope slippage and movement of improvements-estimated at cost to cure based on bid included in appraisal. NOTE impact could be higher than cost. Cost approach attempts to capture depreciated replacement cost plus value of site. Under normal circumstances this is of limited benefit due to difficulty in accurately estimating depreciation from all causes. This assignment is further compounded by past renovations that would normally have extended economic life absent foundation and slippage issues which render the improvements unsafe to occupy.

Estimated Remaining Economic Life (if required): Years

| | | | | | |
|---|---|---|---|---|---|
| OPINION OF SITE VALUE | | | | =$ | 730,000 |
| DWELLING | 2,250 Sq.Ft. @ $ | 170.00 | | =$ | 382,500 |
| | Sq.Ft. @ $ | | | =$ | |
| | Sq.Ft. @ $ | | | =$ | |
| | Sq.Ft. @ $ | | | =$ | |
| | Sq.Ft. @ $ | | | =$ | |
| | | | | =$ | |
| Garage/Carport | 480 Sq.Ft. @ $ | 40.00 | | =$ | 19,200 |
| Total Estimate of Cost-New | | | | =$ | 401,700 |
| Less | Physical | Functional | External | | |
| Depreciation | 401,700 | 300,000 | | =$( | 701,700) |
| Depreciated Cost of Improvements | | | | =$ | -300,000 |
| "As-is" Value of Site Improvements | | | | =$ | 30,000 |
| | | | | =$ | |
| | | | | =$ | |
| **INDICATED VALUE BY COST APPROACH** | | | | **=$** | 460,000 |

**INCOME APPROACH TO VALUE (if developed)** ☒ The Income Approach was not developed for this appraisal.

Estimated Monthly Market Rent $ X Gross Rent Multiplier = $ **Indicated Value by Income Approach**

Summary of Income Approach (including support for market rent and GRM): While sale 5 was a leased fee sale rented at $2,995 when listed there is insufficient credible information concerning the remaining sales potential (hypothetical) rents a well as the subject to apply the income approach using a GRM. The subject is not reasonably rentable absent extensive renovation. Most housing in this area sells with owner occupancy intended rather than for monthly income potential from rents. Income approach was deemed to be inapplicable to this assignment.

**PROJECT INFORMATION FOR PUDs (if applicable)** ☐ The Subject is part of a Planned Unit Development.

Legal Name of Project: na

Describe common elements and recreational facilities:

**Indicated Value by: Sales Comparison Approach $** 410,000 **Cost Approach (if developed) $** 460,000 **Income Approach (if developed) $** N/A

Final Reconciliation Dominant consideration is given to the sales comparison. It is the method most often used by prospective buyers. The cost approach lends limited support however it loses validity where extensive depreciation is present. The income approach was considered and found not to be applicable as most sales in this area occur with owner occupancy intended. As a result there is insufficient credible data to show a sale price to net or gross income relationship.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a Hypothetical Condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a Hypothetical Condition that the repairs or alterations have been completed, ☐ subject to the following required inspection based on the Extraordinary Assumption that the condition or deficiency does not require alteration or repair: see 'as is' extraordinary assumptions and or hypothetical conditions listed in addendum.

☒ This report is also subject to other Hypothetical Conditions and/or Extraordinary Assumptions as specified in the attached addenda.

**Based on the degree of inspection of the subject property, as indicated below, defined Scope of Work, Statement of Assumptions and Limiting Conditions, and Appraiser's Certifications, my (our) Opinion of the Market Value (or other specified value type), as defined herein, of the real property that is the subject of this report is: $** 410,000 **, as of:** 06/15/2020 **, which is the effective date of this appraisal. If indicated above, this Opinion of Value is subject to Hypothetical Conditions and/or Extraordinary Assumptions included in this report. See attached addenda.**

A true and complete copy of this report contains 43 pages, including exhibits which are considered an integral part of the report. This appraisal report may not be properly understood without reference to the information contained in the complete report.

Attached Exhibits:

| | | | | |
|---|---|---|---|---|
| ☒ Scope of Work | ☒ Limiting Cond./Certifications | ☒ Narrative Addendum | ☒ Photograph Addenda | ☒ Sketch Addendum |
| ☒ Map Addenda | ☒ Additional Sales | ☒ Cost Addendum | ☒ Contractor Bid | ☒ Appraiser Qualifications |
| ☒ Hypothetical Conditions | ☒ Extraordinary Assumptions | ☐ | ☐ | ☐ |

Client Contact: Client Name: Mr. Vahe Khojayan

E-Mail: Address: on cover

| APPRAISER | SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable) |
|---|---|
| [signature] | |
| Appraiser Name: Michael F. Ford, AG002512 | Supervisory or Co-Appraiser Name: |
| Company: Michael F. Ford, Appraisals | Company: |
| Phone: (714)366-9404 Fax: | Phone: Fax: |
| E-Mail: mike@mfford.com | E-Mail: |
| Date of Report (Signature): 08/24/2020 | Date of Report (Signature): |
| License or Certification #: AG002512 State: CA | License or Certification #: State: |
| Designation: Ca. General Certified R.E. Appraiser | Designation: |
| Expiration Date of License or Certification: 05/22/2021 | Expiration Date of License or Certification: |
| Inspection of Subject: ☒ Interior & Exterior ☐ Exterior Only ☐ None | Inspection of Subject: ☐ Interior & Exterior ☐ Exterior Only ☐ None |
| Date of Inspection: 07/07/2020 | Date of Inspection: |

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

# ADDITIONAL COMPARABLE SALES

Harutyunyan
File No.: MFF20200707R

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 10366 Ormond St Sunland, CA 91040 | 10420 Ditson St Sunland, CA 91040 | | 9610 Dale Ave Sunland, CA 91040 | | | |
| Proximity to Subject | | 0.06 miles NW | | 0.26 miles NE | | | |
| Sale Price | $ na | | $ 859,000 | | $ 750,000 | | $ |
| Sale Price/GLA | $ /sq.ft. | $ 429.50 /sq.ft. | | $ 425.65 /sq.ft. | | $ /sq.ft. | |
| Data Source(s) | Inspection/cmmts | mls #820002164 | | mls | | | |
| Verification Source(s) | see comments | PR(Realist) doc # | | PR(Realist) | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing Concessions | none forecast | conventional none reported | | cash sale reported | | | |
| Date of Sale/Time | eff.6/15/2020 | coe 7/17/20 | | coe 11/21/2019 | | | |
| Rights Appraised | fee simple | same | | leased fee | | | |
| Location | average | similar | | similar | | | |
| Site | 23,390 sf /15% use | 17,846 / 50%+- | -162,000 | 19,863 /est 35-40% | -103,000 | | |
| View | good | similar | | similar | | | |
| Design (Style) | conventional | similar | | similar | | | |
| Quality of Construction | good* | similar | | similar | | | |
| Age | 1956 / 64 | 58 | | 63 | | | |
| Condition | poor to fair | very good | -300,000 | very good | -300,000 | | |
| Above Grade Room Count (Total / Bdrms / Baths) | 5 / 2* / 3* | 6 / 3 / 2 | | 6 / 3 / 2 | | | |
| Gross Living Area | 2,250 sq.ft. | 2,000 sq.ft. | +25,000 | 1,762 sq.ft. | +49,000 | sq.ft. | |
| Basement & Finished Rooms Below Grade | see addendum comments (-0-) | 464 conversion of garage to GLA | -23,000 | none | | | |
| Functional Utility | poor | superior/under site | | superior/under site | | | |
| Heating/Cooling | fau/cac | similar | | similar | | | |
| Energy Efficient Items | none known | unknown | | unknown | | | |
| Garage/Carport | G2 Blt in | converted above | +20,000 | G2 att | | | |
| Porch/Patio/Deck | patio & deck | superior pool bbq+ | -50,000 | similar | | | |
| Other | not applicable | na | | na | | | |
| Days on Market | Norm is 30-90+- | DOM 12 | | DOM 188 | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ -490,000 | ☐ + ☒ - | $ -354,000 | ☐ + ☐ - | $ |
| Adjusted Sale Price of Comparables | | | $ 369,000 | | $ 396,000 | | $ |

SALES COMPARISON APPROACH

Summary of Sales Comparison Approach Reconciliation within sales comparison: Sales 2; 4 & 5 are closest and in the same hillside-mountain top-canyon area. Sale 2 however sold very significantly higher than asking price with a cash credit to buyer in escrow. Though a comparatively nominal appearing concession, its impact on the above-asking price sale is at least slightly 'suspect'. Sales 1 through 4 all sold in very fast periods suggesting bidding wars above asking was a significant factor.

The adjusted range indications are from $355,000 to $567,500. The mean is $421,700. If the high and low ends of the range are eliminated to avoid the impact and effect of outliers or isolated high and low transaction conditions the mean is then $395,333. I am concluding at an approximate mid range point between the two means. $410,000.

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

**Supplemental Addendum**

File No. MFF20200707R

| Owner | Anahit Harutyunyun | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10366 Ormond St | | | | | | |
| City | Sunland | County | Los Angeles | State | CA | Zip Code | 91040 |
| Lender/Client | Mr. Vahe Khojayan, Esq. | | | | | | |

The subject 'city' is the Sunland area of the incorporated City of Los Angeles.

**Market Conditions**:

The Covid 19 Pandemic has caused extreme fluctuation in the national economy; stock prices, and employment numbers. Contrary to traditional cause and effect economic scenarios, what could or should have been a full and complete economic collapse never happened (so far). Systemic countermeasures and massive infusions of cash into the economy to support families and businesses has reassured American citizens and business so far. Many if not most markets are showing inexplicable spiking of prices beyond comparable sales supported values (nationally). Exceptions to this are riot torn cities where police enforcement has been politically curtailed by elected officials.

Four of the five comparables sales found were sold in under two weeks (some under one week) and most for amounts in excess of asking prices. This is not merely a local Los Angeles phenomenon. I have spoken with appraisers in Virginia, Texas, Colorado, The Dakotas, Florida and others. All are reporting an strong upsurge in volume and unsupportable price surging.

No one can predict how far or how long this surging will continue. The trust in the system is currently being undermined by political factions for their own purposes. Despite the uncharacteristic confidence and rising prices it must be recognized that the broad market is still fragile. Failure to safely resume full employment or alternatively obtain ongoing financial relief can reverse the economy overnight.

Historic low interest rates of less than 3% for 30 year fixed rate loans have not been around since the early 1960's. They are making it easier for some buyers to qualify as well as making housing more affordable for those that can qualify. It is also producing greater net profit to sellers as buyers are less resistant to paying more than recent closed sales support.

If the subject were not subject to severe structural defects it too would likely have benefited from the recent upsurge in prices.

**Site**:
The subject is a side cut, rear down sloped site with a relatively small pad area toward the top of the site to it's street frontage. Drainage appears to funnel toward the rear or across the front. Rearward drainage is not contained and may contribute to slope instability noted at time of inspection.

Slope failure appears to be present at the rear. Most notably under an unpermitted lower level addition, and laterally to the east of that section where patio failure and a retaining wall collapse is noted.

The usable site area as reported by CoreLogic Realist / Realquest is about 3,000+ sf or 13% to 15%+- of the total. I have taken the gross site area directly from the recorded plat map. Corelogic reports it as high as 24,000 sf (stated) but that source is notoriously inaccurate for site areas since they use conversion of fractional acreage percentage to derive SF conclusions. Rounding of acreage percentages produces SF disparities when compared to actual site measurements or plat maps.

## • GP Residential: Description of the Improvements - Property Condition

From the street front the subject appears to be in average to good overall condition. It is the roofing, side and rear elevations that refute that impression. The easterly elevation has some minor patched cracks evident (painted over). The rear wooden deck foundation is suspect. The rear brick patio deck is cracked in line with structural distress from the house illegal conversion running laterally across the lot to the decking. Foundation failure is evident under the illegal addition. A retaining wall along the patio is collapsing. There is an unfinished (tarpaper covered) illegal conversion of a former under balcony area to an enclosed "bedroom." This unfinished area appears in numerous prior listing mls descriptions as 'office area'.

The master bedroom is located above the built in garage and partially over the lower laundry/bathroom and illegal bedroom (office) addition. The master bedroom was opened up along its south wall to incorporate an exterior balcony area as interior bedroom area. The floor is buckling upward at this enclosure to bedroom wall opening. The portion that was former balcony area does not appear to be adequately supported by a foundation beyond original 4'x4' posts that supported the old balcony.

The subject living area is not accurately reported in old MLS. The actual improvement enclosed area does not match public records. This is typical where unpermitted areas are considered in mls but not reported as assessed living area to or by the County Assessor's office. It is also typical where shoddy construction of additions would not or could not pass the building inspections associated with ad ons. The "office to 3rd bedroom" area below the master bedroom is such an area. See sketch notes.
For the purposes of this appraisal (as is) I have only included permitted living area to the extent that can be determined except that the enclosed balcony area off the upstairs master bedroom is included since it now forms the rear wall of the master bedroom. Permitted or not, it is a necessary element of the amster bedroom.

**Sales Comparison Analysis**:

All MLS listed sales within the past year in the subject market area have been considered. One nearby additional transaction was investigated that was found to be an inter-family non open market 'sale' and was excluded as not representing open market typical exposure and sale conditions.

Every effort was made to bracket the subjects most significant physical characteristics. The one that could not be 'bracketed' was that of the extensive damage identified affecting the property. While bracketing is one of many techniques that may be used in the valuation of real estate, it is not a required technique or method.

All sales (larger and smaller) with competitively similar gross site area and GLA that could be identified from the same or competitive market area were considered. The sales analyzed were the most relevant value indicators that could be found.

Sale One is among the higher competing area sales found. This sale has a much larger, fully usable flatter site with superior two way street access for fire and other emergency vehicles. While cul de sac property is often perceived to be more desirable due to less traffic and virtually no through traffic, in fire prone hill and canyon areas where streets are not wide enough for larger emergency vehicles to turn around no premium is found. On the contrary, ingress and egress is far superior on streets such as comparable one fronts to.

This sale had a generally similar sized main living area (house) plus an accessory dwelling unit converted from a large four car garage. It

# Supplemental Addendum

File No. MFF20200707R

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Owner | Anahit Harutyunyun | | | | | | |
| Property Address | 10366 Ormond St | | | | | | |
| City | Sunland | County | Los Angeles | State | CA | Zip Code | 91040 |
| Lender/Client | Mr. Vahe Khojayan, Esq. | | | | | | |

had been extensively renovated and modernized despite being relatively newer to begin with. The construction quality is deemed superior as it was built after tougher earthquake safety requirements of the 1970's as well as after the Northridge earthquake wherein sheer panels were a construction requirement that was not a requirement for pre 1974 construction. To avoid duplicate or overlapped adjustments no separate quality adjustment is made.

Condition differences are adjusted only for the extensive repair needs noted at the subject. Less significant condition variances between the individual comparables aside from the repair needs were qualitatively considered. This sales overall amenities and utility are sufficient to fully offset any perception of view superiority found at the subject.

Sale Two is from the subject's own neighborhood with the most similar location and topographical features except that its slope is not nearly as severe as the subjects. It also had a fully renovated interior; a pool, and larger flat outdoor areas (usable site area, including a usable driveway). The property was first offered at $900,000 and sold for more than asking price with a small concession or inducement.

Sale Three is from a competing area but is also located in generically similar foothill type terrain-albeit less severe than the subject's. This property was a short term flip sale. It sold previously on 9/18/19 for $640,000 as a decent condition but 'older' interior. It was purchased by an agent-investor; renovated to meet current market dictates and resold for $885,000. This sale (among other things) demonstrates the market impact of average condition property compared to very good condition property with a gross price increase in only 7 to 8 months of $245,000. This sale is a paired sale for condition. While it was not a structurally distressed property like the subject is it shows how great the impact of ordinary condition variances may be in this market.

Sale Four is also from the same sub area as the subject and sale two. Its usable site area is superior; it has no significant structural repair issues like the subject does and its a similar view property.

Sale Five is also from the subject sub market area with superior site utility and superior condition.

All sales were considered. Ultimately dominant consideration was given to the mean indication from each of the five closed sales as well as the mean indication excluding the low and the high end of the adjusted indications.

# STATEMENT OF LIMITING CONDITIONS AND CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS: The appraiser's certification that appears in the appraisal report is subject to the following conditions:**

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is valued on the basis of it being under responsible ownership.

2. Any sketch provided in the appraisal report may show approximate dimensions of the improvements and is included only to assist the reader of the report in visualizing the property. The appraiser has made no survey of the property.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. Any distribution of valuation between land and improvements in the report applies only under the existing program of utilization. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

5. The appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous waste, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. This appraisal report must not be considered an environmental assessment of the subject property.

6. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

7. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice, and any applicable federal, state or local laws.

8. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

9. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

10. The appraiser is not an employee of the company or individual(s) ordering this report and compensation is not contingent upon the reporting of a predetermined value or direction of value or upon an action or event resulting from the analysis, opinions, conclusions, or the use of this report. This assignment is not based on a required minimum, specific valuation, or the approval of a loan.



Form ACR2_DEFD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**CERTIFICATION: The appraiser certifies and agrees that:**

**1.** The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3. Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

4. Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5. I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.

6. My engagement in this assignment was not contingent upon developing or reporting predetermined results.

7. My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.

9. Unless otherwise indicated, I have made a personal inspection of the interior and exterior areas of the property that is the subject of this report, and the exteriors of all properties listed as comparables.

10. Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

11. I have relied upon information obtained by third parties in addition to my own observations. Specifically Omega Structural Contractors. A copy of their report is incorporated by specific reference if not physically attached with this appraisal. A reasonable and necessary extraordinary assumption is made that the contents and conclusions of that report are essentially accurate and complete, due to the nature and extent of observed repair needs and structural deficiencies observed by myself.

**ADDRESS OF PROPERTY ANALYZED:** 10366 Ormond St, Sunland, CA 91040

| **APPRAISER:** | | **SUPERVISORY or CO-APPRAISER (if applicable):** | |
|---|---|---|---|
| Signature: | Michael F. Ford | Signature: | |
| Name: | Michael F. Ford, AG002512 | Name: | |
| Title: | Ca. General Certified R.E. Appraiser | Title: | |
| State Certification #: | AG002512 | State Certification #: | |
| or State License #: | | or State License #: | |
| State: | CA Expiration Date of Certification or License: 05/22/2021 | State: | Expiration Date of Certification or License: |
| Date Signed: | 08/24/2020 | Date Signed: | |
| | | ☐ Did ☐ Did Not Inspect Property | |



Form ACR2_DEFD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Assumptions, Limiting Conditions & Scope of Work



| Property Address: 10366 Ormond St | City: Sunland | State: CA | Zip Code: 91040 |
|---|---|---|---|
| Client: Mr. Vahe Khojayan | Address: | | |
| Appraiser: Michael F. Ford, AG002512 | Address: 1956 Fashion Ave, Long Beach, CA 90810 | | |

**STATEMENT OF ASSUMPTIONS & LIMITING CONDITIONS**

**–** The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

- The appraiser may have provided a sketch in the appraisal report to show approximate dimensions of the improvements, and any such sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size. Unless otherwise indicated, a Land Survey was not performed.
- If so indicated, the appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.
- The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.
- If the cost approach is included in this appraisal, the appraiser has estimated the value of the land in the cost approach at its highest and best use, and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used. Unless otherwise specifically indicated, the cost approach value is not an insurance value, and should not be used as such.
- The appraiser has noted in the appraisal report any adverse conditions (including, but not limited to, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property, or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property, or adverse environmental conditions (including, but not limited to, the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

**–** The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

- The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice, and any applicable federal, state or local laws.
- If this appraisal is indicated as subject to satisfactory completion, repairs, or alterations, the appraiser has based his or her appraisal report and valuation conclusion on the assumption that completion of the improvements will be performed in a workmanlike manner.
- An appraiser's client is the party (or parties) who engage an appraiser in a specific assignment. Any other party acquiring this report from the client does not become a party to the appraiser-client relationship. Any persons receiving this appraisal report because of disclosure requirements applicable to the appraiser's client do not become intended users of this report unless specifically identified by the client at the time of the assignment.
- The appraiser's written consent and approval must be obtained before this appraisal report can be conveyed by anyone to the public, through advertising, public relations, news, sales, or by means of any other media, or by its inclusion in a private or public database.
- An appraisal of real property is not a 'home inspection' and should not be construed as such. As part of the valuation process, the appraiser performs a non-invasive visual inventory that is not intended to reveal defects or detrimental conditions that are not readily apparent. The presence of such conditions or defects could adversely affect the appraiser's opinion of value. Clients with concerns about such potential negative factors are encouraged to engage the appropriate type of expert to investigate.

The Scope of Work is the type and extent of research and analyses performed in an appraisal assignment that is required to produce credible assignment results, given the nature of the appraisal problem, the specific requirements of the intended user(s) and the intended use of the appraisal report. Reliance upon this report, regardless of how acquired, by any party or for any use, other than those specified in this report by the Appraiser, is prohibited. The Opinion of Value that is the conclusion of this report is credible only within the context of the Scope of Work, Effective Date, the Date of Report, the Intended User(s), the Intended Use, the stated Assumptions and Limiting Conditions, any Hypothetical Conditions and/or Extraordinary Assumptions, and the Type of Value, as defined herein. The appraiser, appraisal firm, and related parties assume no obligation, liability, or accountability, and will not be responsible for any unauthorized use of this report or its conclusions.

Additional Comments (Scope of Work, Extraordinary Assumptions, Hypothetical Conditions, etc.):

A extraordinary assumption (EA) is one which is believed on the basis of reasonably credible information to be true but which if later found to be inaccurate or untrue, could affect the conclusions (including value) stated within this appraisal.

A hypothetical condition is that which is contrary to what exists. Its use would affect the the conclusions of the appraisal.

EA #1 That structural deficiencies found at the subject property can be remediated for not more than $300,000; & that most prudent buyers would consider that amount based on the contractors bid and variance range to be the market impact of the structural deficiencies.

EA #2 That the subject could in fact be sold in its present condition and that prior negative exposure has not rendered it non marketable.

EA #3 That the City of Los Angeles Building & Safety Department would not require demolition beyond that of the unpermitted lower 'bedroom'.

EA #4 That prior listings and offerings of the subject including structural defect disclosures identified by buyers and their agents have not rendered the subject 'non marketable' due to stigma associated with foundation problems.



Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

## Certifications

Harutyunyan
File No.: MFF20200707R

| Property Address: 10366 Ormond St | City: Sunland | State: CA | Zip Code: 91040 |
|---|---|---|---|
| Client: Mr. Vahe Khojayan | Address: | | |
| Appraiser: Michael F. Ford, AG002512 | Address: 1956 Fashion Ave, Long Beach, CA 90810 | | |

**Fair Market Value Definition Used:**

**California's Definition of Fair Market Value (FMV) is contained in the Code of Civil Procedure:**

**"CAL. CCP. CODE § 1263.320 : California Code – Section 1263.320**

**Search CAL. CCP. CODE § 1263.320 : California Code – Section 1263.320**

(a)The fair market value of the property taken is the highest price on the date of valuation that would be agreed to by a seller, being willing to sell but under no particular or urgent necessity for so doing, nor obliged to sell, and a buyer, being ready, willing, and able to buy but under no particular necessity for so doing, each dealing with the other with full knowledge of all the uses and purposes for which the property is reasonably adaptable and available.

(b)The fair market value of property taken for which there is no relevant, comparable market is its value on the date of valuation as determined by any method of valuation that is just and equitable."

Compensatory FMV (Where the appraisal report is to be used as a basis or guideline for establishing the just compensation to which the owner(s) is entitled for the property.)

Fair Market Value provides for an assessment at the price that the property would bring to its owner if it were offered for sale on an open market under conditions which neither buyer nor seller could take advantage of the need of the other. It is a measure of desirability translated into money amount and might be called the Market Value of the property in its condition based on the date of value (Section 1 of article XIII of the California Constitution) Revenue & Taxation Code Section 110 and Property Tax Rule 2 likewise define "full cash value" or "fair market value" as "the amount of cash or its equivalent that the property would bring if exposed for sale in the open market under conditions in which neither buyer nor seller could take advantage of the need of the other, and both buyer and the seller have knowledge of all of the uses and purposes to which the property is adapted and for which it is capable of being used, and the restrictions upon those uses and purposes."

Implicit in these definitions is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions where by:

1) Buyer and seller are typically motivated.

2) Both parties are well informed or well advised and each acting in what is considered their own best interest.
3) A reasonable time is allowed for exposure in the open market.
4) Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto.

5) The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

SIGNATURES

| Client Contact: | Client Name: Mr. Vahe Khojayan |
|---|---|
| E-Mail: | Address: |

| APPRAISER | SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable) |
|---|---|
| Appraiser Name: Michael F. Ford, AG002512 | Supervisory or Co-Appraiser Name: |
| Company: Michael F. Ford, Appraisals | Company: |
| Phone: (714)366-9404 Fax: | Phone: Fax: |
| E-Mail: mike@mfford.com | E-Mail: |
| Date Report Signed: 08/24/2020 | Date Report Signed: |
| License or Certification #: AG002512 State: CA | License or Certification #: State: |
| Designation: Ca. General Certified R.E. Appraiser | Designation: |
| Expiration Date of License or Certification: 05/22/2021 | Expiration Date of License or Certification: |
| Inspection of Subject: [X] Interior & Exterior [ ] Exterior Only [ ] None | Inspection of Subject: [ ] Interior & Exterior [ ] Exterior Only [ ] None |
| Date of Inspection: 07/07/2020 | Date of Inspection: |

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

# Subject Photo Page

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Owner | Anahit Harutyunyun | | | | | | |
| Property Address | 10366 Ormond St | | | | | | |
| City | Sunland | County | Los Angeles | State | CA | Zip Code | 91040 |
| Lender/Client | Mr. Vahe Khojayan, Esq. | | | | | | |



**Subject Front**

10366 Ormond St

| | |
|---|---|
| Sales Price | na |
| Gross Living Area | 2,250 |
| Total Rooms | 5 |
| Total Bedrooms | 2* |
| Total Bathrooms | 3* |
| Location | average |
| View | good |
| Site | 23,390 sf /15% use |
| Quality | good* |
| Age | 1956 / 64 |



**Subject Rear**



**Subject Street**

# Comparable Photo Page

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Owner | Anahit Harutyunyun | | | | | | |
| Property Address | 10366 Ormond St | | | | | | |
| City | Sunland | County | Los Angeles | State | CA | Zip Code | 91040 |
| Lender/Client | Mr. Vahe Khojayan, Esq. | | | | | | |



## Comparable 1

10529 Art St

| | |
|---|---|
| Prox. to Subject | 0.56 miles N |
| Sale Price | 1,250,000 |
| Gross Living Area | 2,340 |
| Total Rooms | 7+ |
| Total Bedrooms | 4 |
| Total Bathrooms | 3 |
| Location | superior/Hansen Ht |
| View | inferior |
| Site | 15,630/100% |
| Quality | superior |
| Age | 21 |




## Comparable 2

10427 Ditson St

| | |
|---|---|
| Prox. to Subject | 0.08 miles NW |
| Sale Price | 953,500 |
| Gross Living Area | 1,965 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | similar |
| View | similar |
| Site | 18,368/ 30%+- |
| Quality | similar |
| Age | 60 |



## Comparable 3

10329 Valley Glow Dr

| | |
|---|---|
| Prox. to Subject | 0.73 miles N |
| Sale Price | 885,000 |
| Gross Living Area | 2,000 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3 |
| Location | similar |
| View | similar |
| Site | 20,706/ 50% |
| Quality | similar |
| Age | 56 |

# Comparable Photo Page

| Owner | Anahit Harutyunyun | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10366 Ormond St | | | | | | |
| City | Sunland | County | Los Angeles | State | CA | Zip Code | 91040 |
| Lender/Client | Mr. Vahe Khojayan, Esq. | | | | | | |




**Comparable 4**

10420 Ditson St

| | |
|---|---|
| Prox. to Subject | 0.06 miles NW |
| Sale Price | 859,000 |
| Gross Living Area | 2,000 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | similar |
| View | similar |
| Site | 17,846 / 50%+- |
| Quality | similar |
| Age | 58 |



**Comparable 5**

9610 Dale Ave

| | |
|---|---|
| Prox. to Subject | 0.26 miles NE |
| Sale Price | 750,000 |
| Gross Living Area | 1,762 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | similar |
| View | similar |
| Site | 19,863 /est 35-40% |
| Quality | similar |
| Age | 63 |

**Photograph Addendum**

| Owner | Anahit Harutyunyun | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10366 Ormond St | | | | | | |
| City | Sunland | County | Los Angeles | State | CA | Zip Code | 91040 |
| Lender/Client | Mr. Vahe Khojayan, Esq. | | | | | | |



**Alternate street view looking westerly-subject near left of photo**



**Easterly wing to left of entry-angled portion of improvement (LR-DR-Kitchen to left of entry hall)//side cut slope lot from front**



**Rear-under house & brick patio-improper rubble & un grouted block foundation-bare wood pillar posts (4x4)**



**slope & foundation failure line-patios in line with unpermitted add on (behind camera in this view)**



**6x6+- "retaining wall" below collapsing block retaining wall of patio-marks steep slope drop off area**



**Looking straight down at feet from photo to left-indicative of slope severity-note horizontal grass growth**

**Photograph Addendum**

| Owner | Anahit Harutyunyun | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10366 Ormond St | | | | | | |
| City | Sunland | County | Los Angeles | State | CA | Zip Code | 91040 |
| Lender/Client | Mr. Vahe Khojayan, Esq. | | | | | | |



**Same as above-black tar paper covered unpermitted "3rd bedroom" under master BR enclosed balcony (also non permitted)**



**Black walls unpermitted BR; white above is unpermitted balcony enclosure -now part of MBR-facing west from upper deck main level.**



**Collapsing ret. wall of lower patio-note crack left, and person 'hanging on' to walk along outside non code "retaining wall" on slope**



**close up under patio and unpermitted br addition/ non code compliant jury rigged construction & improper materials**



**East elevation of house-unpermitted balcony conversion above. Unpermitted (BR 3) enclosure below (right at black tarpaper)**



**Extension of top left transition from balcony to non code BR 3 below -SW corner of main house viewed from west side setback**

## Photograph Addendum

| Owner | Anahit Harutyunyun | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10366 Ormond St | | | | | | |
| City | Sunland | County | Los Angeles | State | CA | Zip Code | 91040 |
| Lender/Client | Mr. Vahe Khojayan, Esq. | | | | | | |



**interior of unpermitted balcony enclosure to master bedroom and master bath-open to both rooms**



**Remod. Mba-note tub is now rising due to foundation issues below-man in photo is on former 'balcony'-now part of Mbr/Mba.**



**Roof damage adjacent Mbr/Mba wall for photo above (outside)-structural as well as shingles. Above legitimate BR#2**



**'Hump" in floor rising in line with bath wall (top)-slopes down to right (balcony)**



**Front hallway from entry looking toward Br2, main bath, laundry /unperm BR (left before steps) and Mbr steps over garage**



**Mbr over garage & part of unpermitted BR. below. Hallway door upper right-shot from unpermitted enclosed balcony area**

**Photograph Addendum**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Owner | Anahit Harutyunyun | | | | | | |
| Property Address | 10366 Ormond St | | | | | | |
| City | Sunland | County | Los Angeles | State | CA | Zip Code | 91040 |
| Lender/Client | Mr. Vahe Khojayan, Esq. | | | | | | |



**laundry (down from main hall)-bath (left) and to garage behind door.**



**Original (permitted) bedroom to east (right) of photo at left, though on main level up steps & to right**



**Original main bath between original off hallway BR and kitchen area**



**Renovated kitchen. This is approx where the house 'angles' or bends to the rear from front-street straight line**



**Nicely renovated open dining room to living room. Upper rear-deck to right**



**Doorway to 'closet' alcove in unpermitted 3rd bedroom (inside tarpaper structure below MBR/Mba)-severe slope**

# Plat Map

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Owner | Anahit Harutyunyun | | | | | | |
| Property Address | 10366 Ormond St | | | | | | |
| City | Sunland | County | Los Angeles | State | CA | Zip Code | 91040 |
| Lender/Client | Mr. Vahe Khojayan, Esq. | | | | | | |



| Owner | Anahit Harutyunyun | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10366 Ormond St | | | | | | |
| City | Sunland | County | Los Angeles | State | CA | Zip Code | 91040 |
| Lender/Client | Mr. Vahe Khojayan, Esq. | | | | | | |

South or rear part of improvement is oriented to top, contrary to plat map site orientation page where 'north' is at top. This is simply because accurate sketching was more reliably & easily done with the 'sketch bottom' being the front as it appeared from the street during measuring of the exterior elements.




| Living Area | | Area Calculation | | | | |
|---|---|---|---|---|---|---|
| First Floor | 2407.5 ft² | First Floor | | | | |
| Nonliving Area | | ☐ | 30ft x | 27.75ft x | 1.00 = | 832.5 ft² |
| 2 Car Built-In | 480.00 ft² | Δ | 35.85ft x | 21.10ft x | 0.50 = | 378 ft² |
| Unpermitted Lower Lvl | 580 ft² | Δ | 34ft x | 39.96ft x | 0.26 = | 357 ft² |
| Total Living Area (rounded): | 2408 ft² | ☐ | 40ft x | 21ft x | 1.00 = | 840 ft² |

# Zoning Map

| Owner | Anahit Harutyunyun | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10366 Ormond St | | | | | | |
| City | Sunland | County | Los Angeles | State | CA | Zip Code | 91040 |
| Lender/Client | Mr. Vahe Khojayan, Esq. | | | | | | |

North is to top of map.



# Generic Map

| Owner | Anahit Harutyunyun | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10366 Ormond St | | | | | | |
| City | Sunland | County | Los Angeles | State | CA | Zip Code | 91040 |
| Lender/Client | Mr. Vahe Khojayan, Esq. | | | | | | |

"Neighborhood" Generally foothills located on Wheatland Av., Dale., Ave., Dickson and Ormond Sts. S x SE of Sunland Blvd., west of fire roads extending south from Rotta Ave as an east boundary and south to open space. West to southerly curve of Sunland Blvd.



# Location Map

| Owner | Anahit Harutyunyun | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10366 Ormond St | | | | | | |
| City | Sunland | County | Los Angeles | State | CA | Zip Code | 91040 |
| Lender/Client | Mr. Vahe Khojayan, Esq. | | | | | | |

Map orientation: North is to top of map page. Sales 1 & 3 are from the adjacent competitive market area. SImilar economic base.



Professional Qualifications

**Michael F. Ford**

**General Certified Appraiser**

**#AG002512**

*Serving Southern California since 1986*

Mr. Ford entered the appraisal field as an MAI Candidate in 1986, preceded by 6 years California and Nevada real estate sales experience. His initial appraisal training was provided by Kazue Yoshida, MAI; & subsequently Michael J. Vizzini, SRPA. Prior to implementation of FIRREA by California in conformity to Federal Regulations, Mr. Ford had completed most of his required AIREA coursework toward designation and was engaged in full time appraisal of residential, income, commercial and industrial property.

When State Licensing was implemented Mike qualified for and passed tests for **Certification at the General level in 1991**. Since that time, he has appraised a variety of existing as well as proposed residential. Residential income, commercial and industrial properties for various clients and institutions which included RTC, SBA, institutional and private lenders; as well as FHA and FNMA (REOs), & Probate Courts.

From **1991 to 1993 he was Chief Appraiser for United Title Company's** Specific Property Inspection Division, responsible for establishing and managing a high volume full service appraisal subsidiary. Duties included appraisal training and license preparation for a full-time staff of eight as well as contract appraisers, performing daily review appraisals, consultation and performing the complex residential as well as income and commercial appraisal assignments in Los Angeles, Orange, Riverside, San Bernardino, Ventura and Kern Counties.

In mid-1993 he became **Chief Appraiser for Valorem Appraisal** Inc. to perform quality assurance reviews; ongoing appraisal training and appraisal consultation for a high volume, multi state appraisal firm. Concurrent with this (starting in 1991) he also taught Real Estate Appraisal for DRE continuing education through the California Institute of Real Estate, and OREA approved coursework covering USPAPs through Valorem.

Mr. Ford had maintained an ongoing professional association with M**ichael J. Vizzini Associates** from 1986 and returned to independent fee work with him in 1995 until May 2001 performing residential, relocation, income, commercial. Industrial and special purpose appraisals for varied clients as well as Probate Appraisements for Mr. Vizzini (a California Probate Referee as well as appraiser).

In **May 2001, he started his own firm as Michael F. Ford-Appraisal**, to more competitively offer high quality income, commercial and industrial appraisal services to the financial community and public, in Los Angeles, Orange, San Bernardino and Riverside Counties. During this period, he also worked for DJMA/Commercial Realty Advisor's Inc., performing commercial, industrial & residential income property appraisals in these same counties.

He also joined the firm of Accutech Evaluations as a multi-county residential & income property review appraiser in 2003. Mr. Ford was responsible for reviewing the work of eight trainee appraisers; providing guidance to the licensed staff appraisers, and performing the more complex assignments for the firm.

Additionally, in **2004** he entered in to a partnership agreement with **R. S. Badiei of A & A Services** where as **Chief Appraiser**, he performs reviews; training of new appraisers, and performs complex residential; residential-income, commercial & industrial appraisals on behalf of the firm in Los Angeles, Orange, Riverside & San Bernardino Counties.

In **August 2009** Mr. Ford was **rated "Qualified"** by the U. S. Office of Personnel Management **for (Expert Level) Appraiser positions in the 1171 Series** at the GS-14 pay grade, for positions reporting to the Assistant Housing Secretary at HUD's Office of Insured Health Care Facilities. Between August 2009 and April 2010, he was rated "Qualified to Highly Qualified" for additional Senior Appraiser; & Senior Review Appraiser positions ranging from GS 13 to GS 14 pay grades with HUD (multiple offices/divisions); Veterans Benefits Administration (VA), GSA, and IRS (rated Superior Qualified).

**On May 16, 2010** He was offered and **accepted a position as Senior Real Estate Appraiser at the GS-13 level with The Treasury Department** in the Internal Revenue Service, *Large and Mid-Sized Business Division* (LMSB), Engineering and Valuation, Field Specialists Team 1583: Badge Number 1557808. LMSB converted to the *Large Business and International Division* (LB&I) in October 2010. Mr. Ford was primarily responsible for Estate & Gift Tax case real property interest analyses & appraisal review for properties ranging in apparent (reported) values from One million to One-Hundred Million Dollars (or more) as applicable. He was also required to perform business valuation reviews and analyses; non-cash charitable donation and conservation easement case assessments.

In March 2011, he returned to private practice to pursue his own business, and to utilize the intensive Treasury Department / IRS training more directly on behalf of taxpayers by representing their interests through permissible consulting and or advocacy, when applicable.

In 2014 Mr. Ford joined the American Guild of Appraisers of the OPEIU, AFL/CIO. Early on he advocated for the creation and implementation of a National Appraiser Peer Review Committee to assist other Guild appraisers with peer related questions related to specific assignments; and to review the work of members requesting detailed peer review for use in possible defense against false accusations related to alleged USPAP or accepted practices violations. The NAPRC was created with Mike Ford being appointed as its first Chairman. He remains as Chairman today.

Challenges and deficiencies in national as well as state regulatory processes were identified during this period. Most notably absence of a uniform understanding of what '*Customary and Reasonable Fees*' are and why they are important. Mr. Ford has addressed The Appraisal Foundation (TAF) and leadership of the Appraisal Sub Committee (ASC) on this and other issues in person and by correspondence numerous times. He has authored numerous articles related to developing issues of concern for appraisers. Most notably he developed a process by which C&R fees could be measured and applied either regionally across America or as a single national process. That proposal and process was submitted to the Board of Governors of the Federal Reserve, ASC, AGA, TAF and privately published. It can be read at http://www.appraisersguild.org or via his own site at www.mfford.com .

In 2015, he was appointed to the position of Vice President, Special Projects by the Appraisers Guild executive leadership. To date, the NAPRC and staff under Mike's direction have successfully defended or obtained reinstatement of over 90 members facing regulatory investigations; or that had been improperly black listed.

He was also instrumental in promoting the Guild's opposition to and eventual non-funding or defunding of adverse California State Legislation known and passed as AB624, with the support of the Guild; OPEIU and its California Labor Federation contacts and associates. He frequently coordinates with other appraisal coalitions and professional associations on issues of common

Appraiser Qualifications Summary - Page 3

interest. He does not collect a salary or other fees / payments for services from AGA. He volunteers his services for the betterment of his profession.

**Other**:

Mr. Ford is an AGA Member of the Appraisers Guild: A Realtor® in the National Association of Realtors® (NAR) NRDS #214010223; a General Accredited Appraiser (GAA), and Residential Accredited Appraiser (RAA) designated member of NAR; and is on the HUD/FHA approved appraisers roster (CAAG002512); as well as being a California State Certified General Appraiser (AG002512). He is listed in the Appraisal Institutes (AI) Registry of Green Appraisers (nonmember section).

He has published over 73 articles in professional peer sites and in WorkingRE, a national publication of OREP, and appraiser errors and omissions insurance & educational course provider.

Mr. Ford continues to offer free appraisal mentoring to appraisers seeking to improve or upgrade their appraisal skills. He regularly consults with and advises individual appraisers across the United States. He is an on-call advisor to California Capital Bank of Beverly Hills, and a western states appraiser owned appraisal management company.

In February 2012, and again in 2013 he completed the AARP tax aides VITA/TCE training and was certified by the IRS to provide tax counseling and assistance via the TCE program.

Mr. Ford was **appointed by the Mayor and City Council** (Redondo Beach) in 1990 to serve on the **General Plan Advisory Committee**; has participated on the **Noise Ordinance Review Committee**; headed the **Harbor Users Rights Committee**, and has passed the California Coastal Commissions exam for (land use) Plan Analyst I (1991). Mr. Ford has participated in numerous Redevelopment Agency Project reviews for both existing as well as proposed projects, representing a variety of citizen interests. He has been accepted as a Real Estate Expert Witness by the U.S. Federal Bankruptcy Court (Central District) in Los Angeles, and in Riverside, California; and the Los Angeles Superior Court (Long Beach, California).

Additional information is available at the following website URL:

http://www.mfford.com

http://www.appraisersblogs.com

http://www.mfford.blogspot.com




LIC #998075
2516 W Vernon Ave, Los Angeles, CA 90008
www.omegastructuralinc.com

## Proposal & Contract

**Address:** 10366 Ormond St
**Client:** Boris And Anahit
**Phone:** 310-844-2424
**Email:** vahe@kglawapc.com
**Date:** Friday, July 31 2020

**Proposal Provided By:**
**Dylan Peterson**
**Dylan@OmegaStructuralinc.com**
***C: (815) 690-8179***



Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

OMEGA STRUCTURAL CONTRACTORS REPORT - Page 2




*Dear Valued Client,*

*Enclosed is the report of our visual inspection that was conducted on the structural foundation of your residence. The purpose of this report is to detail the current condition of the foundation and provide recommendations to repair the deficiencies.*

*Our inspection was conducted at the request of the client to provide an opinion regarding the existing state of the property's foundation and any other structure providing structural support. This report may also provide information for other types of work/projects requested by the client.*

*Inspections entail a visual examination of the accessible portions of the foundation and may include assumptions based on our knowledge and experience of the areas we cannot access. Should we not be able to visually inspect all parts of the foundation, it is possible that our analysis may contain inaccuracies.*

*All work shall be performed in accordance with the requirements and relevant codes/regulations specified by the City of Los Angeles or appropriate City the property is located within.*

***Please do not hesitate to contact us with questions regarding the information contained in this report/proposal and we look forward to assisting you with all of your structural needs***

*Sincerely,*
*Dylan Peterson*
*and the Omega Structural Team*



Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE




**RESTRICTED USE OF THIS REPORT:**

The use of this report is specifically restricted to the client named within this report and is not transferable or usable by any other parties. This inspection report is not valid without the signed inspection agreement.

**REPORT DEFICIENCY COMMENTS:**

Comments within the report represent a deficiency. Please note that the deficiency comments listed within this report are not a certification that all deficiencies within a system and/or component have been fully diagnosed and/or reported and this inspection report does not provide a guarantee of future performance of any system or component within the house nor the errors of omission with the inspection and/or report do not exist.




## *Findings*

**Site Description:**

- The home was originally constructed in 1964 with a raised foundation and post/piers supporting the interior flooring. The home is on a hillside with a back patio and deck. An addition was partially built on the rear right side but remains uncompleted with exposed lath and incomplete foundation.
- The home is largely unsupported with indications of movement dowhill found in the exterior cracking of stucco around window and door frames, separation of the deck and patio, and interior cracking in the drywall around door/window frames as well as ceiling and walls.
- The most extensive indications of foundation failure are seen in the addition where the floor slopes visibly, approximately 3-4 inches downhill, with cracks (recently patched but still visible). From the exterior the foundation of the addition appears to be nothing more than CMU blocking. It was not possible to verify if rebar was present but at minimum, caissons should be present and a continuous concrete foundation should have been poured.
- The addition's internal framing is also in question and will likely require demolition and rebuilding before it can be inhabited again.
- The rest of the structure desperately requires the construction of caissons and a grade beam to prevent further sinking and sliding downhill.
- At this point I do not advise the addition be occupied as the loads are not properly supported and is a safety risk.







Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE





Omega Structural Inc
2516 Vernon Ave Los Angeles, CA 90008
(323) 373-5964


Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE




Omega Structural Inc
2516 Vernon Ave Los Angeles, CA 90008
(323) 373-5964


Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE





**Recommended Repairs:**

- **Complete a soil report approved by the City**
- **Complete engineering**
- **Construct approximately (12) new caissons with grade beam,**
- **New foundation for the addition**
- **Demolish and rebuild the addition**
- **New retaining wall around the rear patio**



Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Pricing




### ❑ Soils Engineering

Southwest Geotechnical

*Soils Engineering will be required for this project. Our Engineer will use the results of the approved soils report to complete his design and calculations. We have a good working relationship with Southwest Geotechnical and recommend their services. You are also able to contract your own soils engineer to complete the work and provide us with the report.*

***Southwest Geotechnical, Inc.***
*Address: 21704 Golden Triangle Rd # 425, Santa Clarita, CA 91350*
*Phone: (661) 222-9544*

**Estimated Price: $3,500-$5,000 (billed directly by SGI)**

### ❑ Engineering

Southwest Geotechnical

*After the soils report has been approved by the city, our engineer will use that information for design and calculations of the new wall for the home. These designs will then be submitted and approved by the city prior to construction.*

**Price: $6,400.00**

### ❑ Caissons and Grade Beam — 150 Linear Ft

1 Level Building

*Approximately 12 new caissons will be embedded into bedrock and connected by a grade beam which will tie into the foundation. These will be 35" in diameter, hand dug, constructed of rebar cages and poured with at least 2500 psi Concrete.*

Note: This detail subject to change based on the accessibility during inspection.

**Estimated Price: $148,000.00**

### ❑ Partial Foundation Replacement — 58 Linear Ft

1 Level Building

*The structure will be shored/braced to properly provide support during construction. We will demolish the existing foundation and dispose of debris in a permitted 10yrd container to be relocated offsite. A trench following the perimeter of the house will be dug at the appropriate depth and width to accommodate the new foundation. We will frame a new 8inch-wide stem wall, per city standard code, with a new pressure-treated sill plate and 5/8th J-bolts every 6 feet ft on center. (4) #4 rebar will run lengthwise, top and bottom or per designated city code. A cripple wall be framed to appropriate height with 2×4 studs, 2×6 blocking, and LTP4/LTP5 nailing plates.*

Note: This detail may change depending on city code and condition of structure.

**Estimated Price: $ 18,600.00**



Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

❑ **Addition Demo and Construction** **Approx 420 sq ft**

2 Level Building
*Approximately **420'** square **ft.** of living area needs to be first demolished with debris removed offsite, and then reconstructed properly with framing to city code, and the roof extended.*
Note: This detail subject to change based on the accessibility during inspection.

**Estimated Price: $48,000.00**

❑ **Retaining Wall**

4 feet tall x 23 ft long
*A new retaining wall at the rear of the property supporting the back patio is failing and requires a replacement to prevent further deterioration and sliding downhill.*
Note: This detail may change depending on city code and condition of structure.

**Estimated Price: $ 36,000.00**

**Total: $260,500.00**



**Includes:**

- All construction material
- Labor, necessary services
- Supervision
- Tenant coordination
- Housing paperwork
- Coordination with point of contact and/or on site manager and Tenant Coordination
- All Material, Labor & Supervision to Build Plan
- Necessary Services (Porta Potty, Trash Receptacles etc where applicable)
- Haul Away of Construction Related soil & debris from site

**Exclusions:**

- City Building Permit (and Expeditor Fee if applicable)
- Deputy Inspections
- Structural Observations
- City Inspections
- Additional Work outside of plans provided or Additional Engineering Fees (For Extra Design)
- Termite Damage or Dry Rot Damage Repair
- Masonry or any stone-like design or special concrete finish (Concrete will be broom finish)
- Relocation of Plumbing Lines or Electrical
- Cosmetic Repairs/Betterment outside of work area
- Stucco patching & paint outside of work area
- Landscaping

OMEGA STRUCTURAL CONTRACTORS REPORT - Page 11

## *OMEGA STRUCTURAL, INC TERMS AND CONDITIONS*

1. OMEGA STRUCTURAL INC STANDARDS Omega Structural Inc shall exercise usual and customary professional care in the efforts to comply with applicable codes, regulations and laws in effect as of the date of execution of this Agreement.

2. OWNER RESPONSIBILITY Owner is responsible for supplying electricity, water, & sewer. Omega Structural Inc does not dump concrete, mortar, stucco, paint etc. into the owner's sewer system. Owner is responsible to remove and/or to protect personal property. The owner shall point out and warrant the property lines to Omega Structural Inc and shall hold Omega Structural Inc harmless for any disputes or errors in the property line or setback locations. Owner gives Omega Structural Inc permission to place a sign/banner with phone number on the property for the duration of the project for people to call in case of any emergency/construction issues.

3. RIGHT TO STOP WORK Omega Structural Inc shall have the right to stop work if any payment, including any payment for extra work, is not made as agreed in this Contract within 3 days of receipt of invoice. If any payment required under this contract is not made within 3 days of receipt, the project may be kept idle until all payments due have been made current.

4. PERMISSIBLE DELAYS Permissible delays in the completion of the work to be performed under this contract are those caused by acts of Mother Nature, Acts or Omissions of Owner or Owners agents, employees or independent contractors, labor strikes, acts of public utilities, acts of public bodies or inspectors, extra work, changes requested by Owner, failure by Owner to make payments promptly, or other circumstances or contingencies unforeseen by Omega Structural Inc and beyond Omega Structural Incs' reasonable control.

4. TENANTS For applicable projects, tenants will not have to be relocated during the construction process. Tenants will be required to remove vehicles & personal belongings from the parking area where work will be performed during work hours. Hours of operations are Monday- Friday from, 9:00 AM – 5:00 PM. Tenants will not be allowed into the parking area at any time during work hours. Any tenant complaints will be reported immediately to the owners attention. Kevin Fanta shall be put on your list of authorized persons to tow. If tenants' cars remain, they will be towed at their own expense.

5. PAYMENTS Payments to Omega Structural Inc will be due within 3 days of receipt of invoice. Any change orders will be due in full on the next payment due. This is a cash/check transaction unless otherwise specified. If Client fails to make any payment due to Omega Structural Inc for services and expenses within thirty days after receipt of Omega Structural Inc's invoice, the amounts due to Omega Structural Inc will be increased at the rate of 1.5% per month. After non payment for 4 months, Omega Structural Inc will exercise it's full lien rights. Payments may be



made through ACH (with a 1% fee) or through quickbooks invoice (2.9% additional fee) or through credit card (2.4% additional fee). There is no fee for paying by check.

**7. ADDITIONAL FEES/EXCLUSIONS** Masonry or any stone like designs, moving of plumbing or electrical, geo-technical and soils engineering reports, cosmetic repairs outside of scope, any siding/stucco repair other than work area, landscaping, additional work, dry rot, or termite damage repair, and findings from the pre construction meeting with the building inspector and the engineer that is not on the original plan will be considered a change order and additional fees will apply.

**8. WARRANTY** No warranty or representation, either expressed or implied, is included or intended in Omega Structural Inc's proposal and contract. Omega Structural Inc, shall exercise usual and customary professional care in its efforts to comply with applicable codes, regulations and laws in effect as of the date of execution of this Agreement.

**9. INFORMATION PROVIDED BY CLIENT** Information regarding tenants and occupancy are to be provided by the client if applicable. Omega Structural Inc, will submit a schedule of work for Tenant Habitability Plan or Means and Methods Plan. The Client shall provide to Omega Structural Inc such information as is available to the Client and the Client's consultants and Omega Structural Inc shall be entitled to rely upon the accuracy and the completeness thereof.

**10. JOB SITE SAFETY** Omega Structural Inc will exercise job site safety in accordance with California Law. There will be a responsible supervisor on the job site while retrofit work is in progress. Job site will be kept clean in accordance with Cal/OSHA Regulations and Division 33 of the Los Angeles Building Code.

**11. INDEMNIFICATION** Omega Structural Inc will indemnify Owner against claims, liability, loss and expense (including attorneys' fees) arising out of the Work. Such indemnification shall include without limitation damage to building, persons, tenants, tenants' property, claims by third parties relating to the Work or the Ordinances, claims by governmental agencies relating to the Work or ordinances, breach of this contract, and mechanic's liens relating to the Work. Owner will indemnify Omega Structural Inc, against claims, liability, loss and expense (including attorneys' fees), arising out of damages caused by Owner's breach of this Contract.

**12. TERMINATION** This Agreement may be terminated upon ten (10) days written notice by either party should the other fail to perform its obligations thereunder. In the event of termination, the Client shall pay Omega Structural Inc for services completed to the date of termination, including all reimbursable expenses, and materials not returnable and termination expenses.

**13. DISPUTE RESOLUTION** In an effort to resolve any conflicts that arise during or following the completion of the Project, Omega Structural Inc and Client agree that, prior to any litigation,



Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

all claims, counterclaims, disputes and other matters in question between the parties hereto, arising out of or relating to this Agreement or breach thereof, will be submitted to non- binding mediation under the auspices of a mutually agreeable mediation unless the parties mutually agree otherwise. Client and Omega Structural Inc further agree to include the foregoing provision in any and all Agreements with independent contractors and consultants retained for the Project and to require all independent contractors and consultants to likewise include said provisions in any and all Agreements with subcontractors, sub consultants, suppliers, or fabricators so retained.

**13. SEVERABILITY** If any portion of this Agreement is found to be unenforceable, the remaining portions of the Agreement shall remain in effect and be enforced.

**NOTICE TO OWNER:**

To preserve the right to file a claim or lien against your property, certain claimants such as subcontractors or material suppliers are each required to provide you with a document called a "Preliminary Notice". A preliminary notice is not a lien against your property. Its purpose is to notify you of persons or entities that may have a right to file a lien against your property if they are not paid. Generally, the maximum time allowed for filing a mechanics' lien against your property is 60 days after substantial completion of your project.

**MODIFICATION OF AGREEMENT**

Any subsequent amendment, modification or agreement which alters this contract must be signed or initiated by Contractor and Owner, and is to be deemed a part of this contract. The foregoing conditions may only be amended, supplemented, modified, or canceled by a written Agreement
(Omega Structural Inc will provide a release for each progress payment made)



Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE




***Authority to Execute Agreement***

By signing below, each Party warrants and represents that the person signing this Agreement has authority to bind that Party and that the Party's execution of this Agreement is not in violation of any By-law, Covenants and/or other restrictions placed upon them by their respective entity. Any person signing this Agreement for a party, represents and warrants that he has express authority to sign this Agreement for that party and agrees to hold the opposing party harmless for any costs or consequences of the absence of actual authority to sign.

I, ______________________________, have read and understand this Proposal/Contract; the documents incorporated and agree to all terms and conditions. Costs and schedules may change after this time frame with approved change orders and this proposal may need to be revised if both parties agree.

I hereby authorize Omega Structural Inc CSLB 998075 to proceed with the services specified in this proposal and act as an agent for the City Building, Planning, and Housing Departments.

*I authorize only the following person(s) to act as an agent for the property and a point of contact for this project:*

________________________ ________________________ ________________________ Name
Relationship to Property Phone

________________________ ________________________ ________________________ Name
Relationship to Property Phone

Property Title Owner: ______________________________

Mailing Address: ______________________________

Accepted By: ______________________________ Date: ____________________
*Clients Signature*

________I would like Omega Structural to pay the permit fee and invoice me for the amount charged which I will pay upon receipt.

**OR**

________I am responsible for permit fee, structural observation fees & deputy inspector fees which I will pay with each progress payment due as the project progresses and will provide blank checks to LADBS for City Permit Fees.

Accepted By: ______________________________ Date: _______________



Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

OMEGA STRUCTURAL CONTRACTORS REPORT - Page 16




*This Contract and its attachments constitutes the entire agreement between the parties. There are no other agreements, oral or written pertaining to the work to be performed under this Contract. This contract can be modified only by an agreement in writing signed by both parties.*